## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CALAND NEAL**,

     Plaintiff,

v.                                                            Case No. 8:22-cv-1752-WFJ-SPF

**FLORIDA HMA REGIONAL SERVICES
CENTER D/B/A SHARED SERVICES
SARASOTA**,

     Defendant.

_____/

## <u>ORDER</u>

This matter comes before the Court on Defendant Florida HMA Regional Services Center d/b/a Shared Services Sarasota's ("Shared Services") unopposed Motion for Summary Judgment (Dkt. 56). Despite the Court's invitation and warning (Dkt. 60) Plaintiff Caland Neal did not file a response. After careful consideration of the merits, the Court grants the instant Motion.

## BACKGROUND

Ms. Neal did not contest Shared Services's Statement of Undisputed Facts (Dkt. 55). Pursuant to Federal Rule of Civil Procedure 56(c) and (e), as well as the Court's Order in this Matter (Dkt. 60), Shared Services's Statement of Undisputed Facts will be deemed admitted for summary judgment purposes.

Ms. Neal worked for Shared Services as an Accounts Receivable Collections Specialist from June 2016 until her termination in January 2021. Dkt. 55-2 at 18; Dkt. 55-3 at 17. Ms. Neal's employee records reflect that she performed many aspects of her job well. *See generally* Dkts. 55-4, 55-5, 55-6. However, her records also show that she failed to meet established productivity and quality goals; had frequent "time gaps," when she was clocked in but not working; and communicated poorly with her supervisors. *See generally* Dkts. 55-4, 55-5, 55-6. According to Shared Services, Ms. Neal was ultimately terminated for these deficiencies. Dkt. 55-5 at 24.

i.    Ms. Neal's Work Performance

The uncontested facts in this matter depict an unreliable employee who was given many opportunities to improve but failed to do so. Beginning with her first evaluation as a Shared Services employee, Ms. Neal's performance reports show that she had attendance problems. Dkt. 55-4 at 9. During the first few years of her employment, she regularly was tardy, left early, or was unexpectedly absent. *Id.* at 9, 29, 31, 33. She worked overtime or through meal breaks without authorization. Dkt. 55-4 at 13–14, 16, 24. She had time gaps, in which she was clocked in but not working for more than ten minutes (Shared Services allowed time gaps of less than ten minutes). Dkt. 55-6 at 8–9. And she fell below established production and

quality goals. Dkt. 55-4 at 33–34. In 2019, Ms. Neal was placed on a Performance Improvement Plan ("PIP") to address these issues. Dkt. 55-4 at 36–41.

During the Covid-19 pandemic, Ms. Neal worked remotely, and her productivity and quality metrics, time gaps, and communication continued to suffer. Dkt. 55-6 at 11; Dkt. 55-7 at 2; Dkt. 55-8 at 2. For example, one day she clocked in at 8:10 AM but did no work until 1:07 PM. Dkt. 55-5 at 15. Her productivity levels were consistently lower than the stated goal of 95%. Dkt. 55-4 at 36–41 (reflecting goal of 95%); Dkt. 55-5 at 20, 22, 24 (reflecting performance during pandemic). She did not meet her quality metrics. Dkt. 55-5 at 15, 20, 22. She also failed to obtain childcare for her infant and school-age children. *Id.* at 17.

On October 15, 2020, Shared Services once again placed Ms. Neal on PIP related to her on-going attendance and dependability problems. Dkt. 55-5 at 12–13. While on PIP, Ms. Neal continued to work remotely but was to meet telephonically with manager Emily Leach on a weekly basis. *Id.* at 13. The PIP included specific performance expectations, including time gaps of no more than 10 minutes at a time, productivity of 55 accounts per day, quality metrics, and better communication during remote work. *Id.* Ms. Neal was also expected to arrange childcare during working hours. *Id.* Ms. Leach informed Ms. Neal that if her performance did not improve, Shared Services would begin implementing progressive discipline measures. *Id.*

Ms. Neal did not comply with the PIP expectations. She received a First Written Warning on October 29, 2020, a Second Written Warning on November 13, 2020, and a Final Written Warning on December 9, 2020. Dkt. 55-5 at 24. On January 5, 2021, Shared Services terminated Ms. Neal for failing to improve in the areas of productivity and quality, time gaps, and communication. *Id.*

ii.     Alleged Harassment and Retaliation

Despite her documented poor work performance, Ms. Neal filed the instant Second Amended Complaint in response to her termination. The Second Amended Complaint avers that Ms. Neal's first supervisor at Shared Services, Mr. Paul Twist, sexually harassed her by forcing her into an unwanted hug. Dkt. 45 ¶¶ 19–24; Dkt. 55-2 at 29. Ms. Neal claims that after she resisted this advance, Mr. Twist began a campaign of retaliation. *See generally* Dkt. 45.

Ms. Neal complained to Human Resources ("HR") about Mr. Twist, and HR Director Lisa Carter investigated. Dkt. 55-5 at 3. Though she uncovered no evidence of wrongdoing, Ms. Carter removed Mr. Twist from Ms. Neal's work group and placed him in a new, non-supervisory position. *Id.* But Ms. Neal contends that her subsequent managers continued the harassment. *See generally* Dkt. 45. She avers that her failure to meet productivity and quality quotas was a result of these managers tampering with the computer tracking program. Dkt. 55-3 at 8. Further, she argues that her placement on PIP was not a response to her

inadequate attendance and poor work product but was instead an effort to terminate her for rejecting Mr. Twist. Dkt. 45 ¶ 86.

### iii.   Procedural History

Ms. Neal filed a Charge with the Equal Employment Opportunity Commission ("EEOC") and received her right to sue letter in May 2022. Dkt. 1-1 at 1. Proceeding pro se, she brought her initial Complaint and several amended complaints, with the Second Amended Complaint being filed in July 2023. Ms. Neal asserts three counts: (1) sex discrimination under Title VII of the Civil Rights Act ("Title VII"); (2) Title VII retaliation; and (3) retaliation under the Family Medical Leave Act ("FMLA"). Dkt. 45 ¶¶ 95–130.

Shared Services filed the instant Motion for Summary Judgment, accompanied by a statement of facts and supporting exhibits, on March 29, 2024. Dkts. 55, 56. On April 3, 2024, the Court issued a Notice informing Ms. Neal that a response to the Motion was due April 25, 2024 and warning her that it would consider the Motion without a hearing after May 7, 2024. Dkt. 60. The Court further cautioned Ms. Neal that failure to oppose the Motion for Summary Judgment "may result in the entry of a judgment for the Defendant and against Plaintiff Neal without further notice or proceedings." *Id.* at 1. Ms. Neal did not file a response or request an extension of time. The Court will therefore consider the unopposed motion on its merits.

## LEGAL STANDARD

A district court should grant summary judgment when it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party must identify those portions of the pleadings, answers to interrogatories, admissions on file, and/or affidavits (if any) that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–58 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). When a motion for summary judgment is unopposed, the district court "must consider the merits of the motion" and "must ensure that the motion itself is supported by evidentiary materials." *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return

a verdict in its favor." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) "With regard to issues on which the non-moving party bears the burden of proof, the moving party need not support its motion with evidence negating the opponent's claim." *Id.* (quotation omitted). Although a pro se complainant "is entitled to a liberal interpretation" of her pleading, she is not excused from meeting the "essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## ANALYSIS

Shared Services moves the Court to enter summary judgment on each count of the Second Amended Complaint. Because there is an absence of evidence to support each count, the Court grants the instant Motion.

### I.    Title VII Sex Discrimination

Count I alleges sex discrimination in violation of Title VII. Specifically, Ms. Neal asserts that she "suffered sexual harassment and a hostile work environment for several months" and that Shared Services failed to adequately respond. Dkt. 45 ¶¶ 98–101. Shared Services argues that this claim fails as a matter of law for three reasons: (1) it is outside the scope of Ms. Neal's EEOC charge; (2) is based, in part, on events that fall outside Title VII's two-year statute of limitations; and (3) the alleged harassment Ms. Neal describes was not severe or pervasive. Dkt. 56 at

7

2. Because the Court agrees that the purported harassment was not severe or pervasive, it need not address Shared Services's first two arguments.

"To prevail on a hostile work environment claim," a plaintiff must "prove five elements: (1) [s]he 'belongs to a protected group'; (2) [s]he was 'subject to unwelcome harassment'; (3) the harassment was 'based on a protected characteristic'; (4) the harassment was 'sufficiently severe or pervasive to alter the conditions of' [her] employment; and (5) [her] employer was 'responsible for' the hostile work environment." *Copeland v. Ga. Dep't of Corrs.*, 97 F.4th 766, 774 (11th Cir. 2024) (citing *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)). "The severe-or-pervasive element . . . makes actionable only a work environment sufficiently suffused with intimidation, ridicule, and insult to alter the conditions of the victim's employment." *Id.* at 775 (quotation omitted). This element has subjective and objective requirements. *Id.* "To satisfy the subjective requirement, a plaintiff must subjectively perceive the hostile work environment to be abusive." *Id.* (quotation omitted). The objective requirement "requires a plaintiff to show an environment that a reasonable person would find hostile or abusive." *Id.* (quotation omitted).

The objective requirement encompasses four factors: (1) the frequency of the harassment; (2) the severity of the harassment; (3) whether the harassment is "physically threatening or humiliating"; and (4) whether the harassment

"unreasonably interferes with job performance." *Id.* (quotation omitted). These factors are not to be rigidly applied. *Id.* None is strictly required or dispositive, and all are to be viewed in light of the totality of the circumstances. *Id.* In evaluating the "severe or pervasive" prong, courts should only consider purported harassment based on the protected characteristic. *See Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 602 (11th Cir. 2008) (disregarding allegedly harassing comments that were not based on plaintiff's protected characteristic). In the instant matter, the alleged sex-based harassment was not objectively severe or pervasive to support a hostile work environment claim.

First, the harassment was not frequent. Harassment is frequent when it consists of "repeated incidents . . . that continue despite the employee's objections." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2022) (quotation omitted) (finding that supervisor who "hurled ethnic slurs at [the plaintiff] three to four times a day" exhibited frequent harassing conduct). While there is no "magic number," that equates to frequency, *id.*, daily harassment over a period of years certainly qualifies. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1251–1257 (11th Cir. 2014). Fifteen harassing incidents in fourteen months is "not infrequent." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). In contrast, eight incidents over two years is not frequent. *See*

*Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1154 (11th Cir. 2020) (discussing *Alexander v. Opelika City Schools*, 352 F. App'x 390, 393 (11th Cir. 2009)).

Even including harassment that was not sex-based, Ms. Neal alleged six specific incidents of harassment by Mr. Twist and eight specific incidents of retaliation by other Shared Services employees over a four-year period. Fourteen incidents in forty-eight months falls well outside the range of frequency established by Eleventh Circuit precedent. *See id.* at 1153 (characterizing *Johnson*'s once-per-month harassment as the lower-end of frequency that still satisfies the first factor). Ms. Neal also made vague reference to on-going alleged retaliation, for example "daily" stalking. Dkt. 55-2 at 36. This type of vague, uncorroborated testimony is not sufficient to establish frequency. *Fernandez*, 961 F.3d at 1154 (explaining that "conclusory" statements of frequency backed up by only a few examples is not enough to satisfy the factor). The first factor is not met.

Nor was the harassment Ms. Neal alleges severe, humiliating, or physically threatening. The only incident directly related to Ms. Neal's sex was the unwanted hug.[1] Dkt. 55 ¶¶ 16–17. An unwanted hug—even a "tight full body hug"—is not severe harassment. *Bird v. Board of Regents*, 7:21-CV-00062 (WLS), 2023 WL 6283322, at *2 (M.D. Ga. Sept. 26, 2023). The *Bird* plaintiff alleged that her

---

[1] The Second Amended Complaint alleges that Mr. Twist denied Ms. Neal pregnancy-related FMLA leave, Dkt. 55 ¶ 25, but the uncontested statement of facts indicates that all of Ms. Neal's FMLA leave was granted, *id.* ¶ 7.

supervisor, perceiving her to be upset about a recent suicide in the department, gave her a "brief, one-time hug." *Id.* at *8. After the plaintiff rebuffed him, the supervisor appeared angry and began parking his vehicle next to her office window every day. *Id.* at *3. The *Bird* court found this conduct was not severe or pervasive. *Id.* at *8. In the same way, Mr. Twist hugged Ms. Neal after she had been sharing her concern over her mother's cancer treatment with co-workers. Dkt. 55 ¶¶ 15–17. Ms. Neal alleges that Mr. Twist reacted awkwardly when she pushed him away and began "stalking" her. *Id.* ¶¶ 17, 29. These events are similar to those in *Bird*, and just as in *Bird*, they do not constitute severe, physically threatening, or humiliating sex-based harassment.

Finally, the alleged sexual harassment did not unreasonably interfere with Ms. Neal's job performance. After Ms. Neal rejected his hug, Mr. Twist simply walked away. Dkt. 55 ¶ 17. Ms. Neal did not allege that she was unable to return to work or was otherwise impacted by the incident. *See generally* Dkt. 45. The sexual harassment to which Ms. Neal was allegedly subjected was not severe or pervasive; as a result, Count I fails as a matter of law.

## II.    Title VII Retaliation Claim

Next, Shared Services asks the Court to grant summary judgment on Count II, Ms. Neal's Title VII retaliation claim, for four reasons: (1) the claim is time-barred; (2) the claim falls outside the scope of the EEOC charge; (3) Ms. Neal

failed to make out a prima facie case of retaliation; and (4) Ms. Neal failed to show that Shared Services's proffered legitimate reason for her termination was pretext. Dkt. 56 at 2. Even if the Court were to rule in Ms. Neal's favor on the first three points, it would still grant summary judgment because Ms. Neal failed to show pretext. Ultimately, Ms. Neal's claim fails because none of the cited evidence creates a reasonable inference of retaliation.

Two types of activity are protected under Title VII: (1) opposing an unlawful employment practice; or (2) making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3. In the context of retaliation claims, an adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fey Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "An employer may be held liable for the discriminatory acts of a supervisory employee if the employer has actual knowledge of the acts and does nothing to stop them, if the supervisor is sufficiently high within the management of the company that his actions may be imputed to the employer, or if the discriminatory action has tangible results." *Mangrum v. Rep. Indus., Inc.*, 260 F. Supp. 2d 1229, 1246 (N.D. Ga. 2003) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 789–90 (1998)).

Often, a Title VII retaliation claim based on circumstantial evidence is analyzed under *McDonnell Douglas*:

> Pursuant to that framework, the plaintiff first must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected conduct—that is, conduct protected by Title VII; (2) she suffered an adverse action; and (3) there is some causal relationship between the two events. The burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action. Assuming the employer's burden is met, the burden shifts back to the plaintiff to establish that the reason offered by the employer was not the real basis for the decision, but a pretext for retaliation.

*Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (quotations omitted).

Once a plaintiff establishes her prima facie presumption of retaliation, the burden shifts to the employer to offer a legitimate, nonretaliatory reason for its actions. This "exceedingly light burden is one of production, not persuasion." *Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017). After the employer has satisfied its burden, the plaintiff seeking to survive summary judgment must "make a sufficient factual showing to permit a reasonable jury to rule in her favor," *Lewis v. Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019), on the question of whether, "but for her alleged protected act, her employer would not have [taken the adverse action]," *Gogel v. Kia Motors Mfg.*, 967 F.3d 1121, 1136 (11th Cir. 2020).

The burden of showing pretext is a high one for the plaintiff. If the employer's "proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it." *Id.* (quotations omitted). But the plaintiff must not only show that the employer's proffered reason was false—she must also show that Title VII retaliation was the actual reason for the adverse action. *Id.*

In the instant matter, Ms. Neal's alleged Title VII protected activities include rejecting Mr. Twist's hug, reporting Mr. Twist's harassment, and following up on the status of an investigation. Dkt. 56 at 12. She asserts the following retaliatory adverse actions: Mr. Twist stalked her, wrote her performance review, attended a meeting where she was present, and caused her emotional damage; and Shared Services's managers did not properly investigate her complaint and manipulated her performance data.[2] *Id.* She did not testify at deposition that her discharge was retaliatory, *id.*, although she asserts as much in her pleadings, Dkt. 45 ¶¶ 74, 118. For purposes of the instant Motion, the Court will assume that Ms. Neal could point to record evidence showing that her termination was "not wholly unrelated" to her purportedly protected activity. *Gogel*, 967 F.3d at 1135.

---

[2] In her deposition, Ms. Neal claimed that Shared Services misrepresented the nature of her discharge to interfere with her unemployment benefits. Dkt. 56 at 12. This was not alleged in her Second Amended Complaint. *See generally* Dkt. 45.

Shared Services put forth evidence, which Ms. Neal did not contest, that it investigated and stopped Mr. Twist's alleged retaliation. Dkt. 55-5 ¶¶ 5–6. Thus, it cannot be held liable for those alleged actions. *See Faragher*, 524 U.S. at 789. The remaining adverse actions are manipulation of Ms. Neal's performance data and discharging her. Even if a jury found that each of these actions were adverse and connected to protected activity, and even if Ms. Neal's Title VII claim were not time-barred or outside the scope of her EEOC charge, summary judgment would still be due because Ms. Neal failed to rebut Shared Services's proffered legitimate, nonretaliatory reason for discharging her.

Shared Services asserts that it fired Ms. Neal because of "her ongoing performance problems after a series of disciplinary actions without improvement." Dkt. 56 at 18. Poor work performance—including low productivity scores, failing to meet quotas, and failing to improve after being placed on PIP—is a legitimate, nonretaliatory reason for discharging an employee. *Lowe v. Exel, Inc.*, 758 F. App'x 863, 864–67 (11th Cir. 2019) (employee's poor performance included low computer-tracked productivity); *Smith v. Pefanis*, 652 F. Supp. 2d 1308, 1333 (N.D. Ga. 2009) (failure to meet quota and failure to improve on PIP are legitimate reasons for termination). Therefore, Shared Services has met its burden. To survive summary judgment, Ms. Neal must not only show that Shared Services's complaints about her performance were pretextual—she must also

15

point to evidence showing that retaliation was the real reason Shared Services fired her. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000). Based on the cited materials, she cannot do this.

When an "employer produces performance reviews and other documentary evidence . . . that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997), abrogated on other grounds by *Lewis*, 918 F.3d at 1224. In *Holifield*, the employer presented "ample documentary evidence showing that [the plaintiff] was not performing his job . . . according to their requirements." *Id.* The plaintiff claims that "this evidence was created solely in retaliation for [his] discrimination complaints," but offered no evidence other than his own unsubstantiated assertion. *Id.* The Eleventh Circuit affirmed a grant of summary judgment to the defendants. *Id.*

In the same way, the cited materials reflect nothing, other than her own unsupported assertion, to show that Ms. Neal's poor work performance was either manufactured by Shared Services or pretext for retaliation. Even crediting Ms. Neal's bald allegation that Shared Services manipulated her productivity and

quality numbers,[3] Shared Services can still point to her failure to comply with other terms of her PIP as a legitimate, nonretaliatory reason for discharging her. In addition to improving her computer-tracked numbers, Ms. Neal's PIP required her to obtain childcare during working hours, communicate with her supervisors, and meet weekly to discuss her progress. Dkt. 55-5 at 12–13. Ms. Neal failed to obtain childcare, Dkt. 55-5 at 4, 17, failed to reply to emails when requested, *id.* at 20, and failed to attend all scheduled meetings, *id.* at 12.

The Court further notes that Ms. Neal is a non-movant who bears the ultimate burden at trial to refute pretext and show intentional discrimination. *Reeves*, 530 U.S. at 146–147. To survive summary judgment, therefore, she must meet her "essential burden" of pointing to record evidence that shows not only that Shared Services's proffered reason was pretext, but also that discrimination was the real reason. *Cohen*, 83 F.3d at 1349; *Brown*, 906 F.2d at 670. By failing to oppose the instant Motion, Ms. Neal has not carried this burden. The Court is not required to construct an argument for her; it need only ensure that Shared Services has supported its motion with evidence negating Ms. Neal's claim. *Cohen*, 83 F.3d at 1349. The evidence recounted above is ample support for the Motion.

---

[3] The Court cannot assess credibility at the summary judgment stage; however, it notes that Ms. Neal's performance records are replete with instruction to account for time gaps and low productivity / quality metrics in her end-of-day reports, and questions why there is no evidence in the record of Ms. Neal pushing back on these allegedly manipulated numbers in real time. *See* Dkt. 55-5 at 7–24.

Additionally, there is no "convincing mosaic" of evidence that Shared Services retaliated against Ms. Neal. The phrase "convincing mosaic" recognizes "that courts must consider the totality of a plaintiff's circumstantial evidence on summary judgment." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023). "Convincing mosaic" is "not a legal test of any kind." *Id.* Regardless of how a plaintiff chooses to organize her retaliation claim, to survive summary judgment she "must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful retaliation against the employee." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). Furthermore, a plaintiff cannot hide behind the convincing mosaic approach to avoid rebutting an employer's proffered reason for an adverse action. *Id.* at 1313. If an employer attempts to "explain its conduct" by presenting a legitimate, nonretaliatory reason, "the employee needs to rebut that explanation." *Id.*

For the reasons explained above, Ms. Neal failed to rebut Shared Services's proffered nonretaliatory reason for its conduct. More fundamentally, and also for the reasons stated above, the evidence before the Court (i.e., the evidentiary materials cited by Shared Services in its unopposed Motion) does not create a reasonable inference of retaliation. Regardless of how Ms. Neal may have chosen

to organize her evidence, had she filed a reply, summary judgment is due Shared
Services on Count II.

### III.   FMLA Retaliation

Finally, Shared Services urges the Court to grant it summary judgment on
Ms. Neal's FMLA retaliation claim (Count III) for two reasons: the claim is time-
barred, and Ms. Neal did not suffer any adverse action for taking FMLA leave.
Dkt. 56 at 23–24. Even if neither of these arguments were meritorious, the Court
would still grant summary judgment for Shared Services on Count III because Ms.
Neal once again failed to rebut Shared Services's legitimate, nonretaliatory reasons
for taking the actions it did.

An employee engages in FMLA-protected activity by taking FMLA leave or
participating in an FMLA complaint or proceeding. 29 U.S.C. § 5105. As with
Title VII, an action is adverse for purposes of an FMLA retaliation claim if it
would dissuade a reasonable employee from engaging in FMLA-protected activity.
*See Lawson v. Plantation Gen. Hosp.*, 704 F. Supp. 1254, 1269 (S.D. Fla. 2010)
(applying *Burlington* to an FMLA retaliation claim).

As with Title VII retaliation, plaintiffs relying on circumstantial evidence to
press an FMLA retaliation claim typically use the *McDonnel Douglas* framework:

> Under the McDonnell Douglas framework, the plaintiff bears the
> initial burden of establishing a prima facie case of retaliation. To do
> so, the plaintiff must show that[:] (1) she engaged in statutorily
> protected conduct; (2) she suffered an adverse employment action;

and (3) there is some causal relation between the two events. If the plaintiff makes that initial showing, the burden next shifts to the defendant to proffer a legitimate reason for the adverse action taken against the plaintiff. This responsive burden is a simple burden of production that can involve no credibility assessment. And if the defendant clears that low hurdle the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reason is merely pretext for prohibited, retaliatory conduct. The plaintiff, therefore, bears the ultimate burden of persuasion.

*Lapham v. Walgreen Co.*, 88 F.4th 879, 893–894 (11th Cir. 2023).

Here, Ms. Neal stated at her deposition that she utilized FMLA leave, which is a protected activity under 29 U.S.C. § 5105. Dkt. 55-2 at 23–24. She also testified that she was written up for taking that leave. Dkt. 55-2 at 35. Even assuming that the write-ups in question constitute adverse actions, Ms. Neal's later testimony negates that they were caused by her protected FMLA activity. She stated in her deposition that she was actually written up in retaliation for refusing Mr. Twist's advances. Dkt. 55-3 at 12. As a result, she cannot point to any evidence showing that taking FMLA leave was a "but for" cause of the write-ups. *Lapham*, 88 F.4th at 893. Shared Services is therefore correct that Ms. Neal failed to show she suffered any adverse action as a result of engaging in FMLA-protected activity.

A discharge is unquestionably an adverse action, but there is no evidence beyond Ms. Neal's assertion in the pleadings that indicates her discharge was in retaliation for her use of FMLA leave. *See* Dkt. 45 ¶¶ 124–25. Even if Ms. Neal

had pointed to evidence showing that her discharge was not wholly unrelated to her exercise of FMLA rights, *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), her claim would fail as a matter of law for the same reason as her Title VII claim—she failed to rebut Shared Services's proffered legitimate, non-retaliatory reason for terminating her.

As under Title VII, negative performance reviews, poor communication, and low productivity are all  legitimate, non-retaliatory reasons for discharge in the context of an FMLA retaliation claim. *Lapham*, 88 F.4th at 894. Shared Services alleged that it discharged Ms. Neal for poor productivity and quota numbers, inadequate communication, and failing to improve on PIP. It submitted multiple negative performance reviews, as well as evidence of the many opportunities it gave Ms. Neal to improve her work. Dkt. 55-5 at 10–24; Dkt. 55-6 at 7–11; Dkt. 55-7 at 1. Just as with her Title VII claim, Ms. Neal did not rebut Shared Services's proffered reason as pretext. Ms. Neal cannot point to any evidence from the cited materials that Shared Services's proffered reason was pretext or that Ms. Neal's FMLA-protected activity was the real reason for her discharge. No matter how it is organized—whether through *McDonnell Douglas* or as a convincing mosaic—the evidence before the Court does not support a reasonable inference of FMLA retaliation. As a result, Ms. Neal's Count III claim of FMLA retaliation fails as a matter of law.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Shared Services's Motion to Admit Undisputed Facts (Dkt. 68) is **GRANTED**.

2. Shared Services' Motion for Summary Judgment (Dkt. 56) is **GRANTED**.

The Clerk is directed to terminate all deadlines and close this case. **DONE AND ORDERED** at Tampa, Florida, on May 30, 2024.

*/s/ William F. Jung*_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Pro Se Party
Counsel of Record

22